IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | |
|---|---|
| HENRY PARKER, #178 271 | * |
| Plaintiff, | * |
| v. | *   2:04-CV-1236-WKW |
| | (WO) |
| COI PERRY WOODS | * |
| Defendant. | * |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Henry Parker ["Parker"], filed this 42 U.S.C. § 1983 action for damages on December 28, 2004 claiming that Defendant, Perry Woods ["Woods], subjected him to excessive force in violation of the Eighth Amendment. The incident about which Parker complains occurred on March 21, 2003 at the Kilby Correctional Facility.[1]

Defendant filed a special report, a supplemental special report, and supporting evidentiary materials addressing Parker's claims for relief. On May 24, 2005 the court entered an order which informed Parker that Defendant's special report, as supplemented, may at any time be treated as a motion for summary judgment. (Doc. No. 16.) The court also explained to Parker the proper manner in which to respond to a motion for summary judgment. Parker responded to Defendant's special report, as supplemented, which the court

---

[1] During the pendency of this action, Parker was transferred to the Loxley Work Release Center located in Loxley, Alabama.

now treats a motion for summary judgment. (Doc. No. 15.) Upon consideration of the motion, the evidentiary materials filed in support thereof, and Parker's opposition to the motion, the court concludes that Defendant's motion for summary judgment is due to be granted.

## I.  SUMMARY JUDGMENT STANDARD

To survive the properly supported motion for summary judgment filed by Defendant, Parker is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is therefore appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Parker has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

## II. DISCUSSION

Parker's complaint alleges that "Officer Woods blatantly, maliciously, and sadistically

jumped on [him] with total disregard for [his] safety as well as disregard for institutional policy." As a result of Wood's "unprovoked attack," Parker asserts that he suffered pain in his left shoulder. He seeks to hold Woods responsible for the cost of surgery to repair his left shoulder and asks that Woods be liable for a monetary settlement due to pain and suffering he has endured. (*Doc. No. 1 at pgs. 3-4.*)

Based on Wood's dispositive motion and the evidentiary material filed in support of the motion, the following facts are undisputed or, if disputed, are taken in the light most favorable to Parker. On March 21, 2003 at approximately 6:50 a.m., Woods ordered Parker to get up and make his bed. Woods then went to the print shop to check on other inmates. Woods returned to Parker's dorm and found him still in bed. Woods again directed Parker to get up and make his bed. Parker did not respond. Woods directed yet a third time that Parker get up and make his bed. Parker then jumped up from his bunk and addressed verbal hostilities towards Woods. As a result of Parker's belligerent manner, Woods grasped Parker's left arm and the back of his pants and started escorting him to Lieutenant Bolling's office. During this escort, both Parker and Woods fell to the floor. They got up and proceeded to the office. Once in the office, Woods handcuffed Parker, who then apologized to Woods stating that he was wrong and should not have acted as he did. Woods explained the incident to Lt. Bolling who instructed Woods to escort Parker to the infirmary for a body chart.

A registered nurse examined Parker. The emergency treatment record reflects that Parker told the nurse that Woods woke him up and that he was sitting up in bed after Woods

told him twice to get up. Parker then told the nurse the Woods swore at him and grabbed his left shoulder and started dragging him between the beds, at which time they both fell. Parker stated that he fell on his right side and Woods landed on his left side. He complained of barely being able to move his left shoulder. The nurse found no signs of acute stress. Parker had a scratch on the left side of his back. Parker told the nurse that his shoulder had been broken on the street and that he was scheduled for an x-ray of his shoulders that day. She noted Parker's complaint of shoulder pain and provided and/or prescribed him Tylenol and Flexeril. The nurse released Parker to his assigned living area pending disciplinary action for violation of institutional rules against failing to obey a direct order of a Department of Corrections official and insubordination.[2]   (*Doc. No. 11*, *Woods Affidavit, Incident Report, Plaintiff's Medical Record*.)

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 503 U.S. 1 (191992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether the force was applied in a good-faith effort to maintain or restore discipline,

---

[2]The undisputed evidentiary material before the court shows that Parker entered a guilty plea to the disciplinary charge of insubordination as a result of being verbally abusive toward Woods on March 21, 2003 and a guilty plea to the charge of failing to obey a direct order when he refused, on March 21, 2003, Woods' direct orders that he get up and make his assigned bed. (*See Doc. No. 11, Disciplinary Reports*.)

or maliciously and sadistically to cause harm." *Id*. at 6. Thus, summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy. *Whitley*, 475 U.S. at 312 (riot and hostage situation). In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Id*. at 6-7 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the prison official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. The *Hudson* Court made it clear that the extent of the injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id* at 7.

In the instant action, it is undisputed that Parker jumped at Woods in a threatening and/or hostile manner after Woods gave him a third direct order to get up and make his

6

assigned bed. In his opposition Parker questions Woods' action during a 25 minute time period based on the incident report which reflects that the incident began at 6:50 a.m. but was not reported until 7:15 a.m. (*See Doc. No 15 at pg. 5.*) Parker contends that during this time period Woods "maliciously attack[ed]" him for 25 minutes. (*Id.*) However, according to the unrefuted evidence before the court, during the 20-25 minute time period in question, Woods exited the dormitory to check on inmates in the print shop and returned to Parker's dorm at approximately 7:10 a.m. only to find that Parker had not complied with the order given to him at 6:50 a.m. (*See Doc. No. 11, Institutional Incident Report.*) Woods then gave Parker another direct order to get up and make his bed which was followed by a third order that he comply with this directive. When Parker aggressively jumped at Woods after Woods gave the third verbal command, the situation was such that Woods' options became limited to some use of force to restore discipline. Woods grasped Parker by the left arm and the back of his pants to escort him to Lt. Bolling's office. During the escort, inmate and officer fell to the floor. They picked themselves up and proceeded to Lt. Bolling's office without further incident.

Based on the undisputed evidence in the record, Woods acted "in a good-faith effort to maintain or restore discipline," and not "maliciously or sadistically to cause harm." *See Hudson*, 503 U.S. at 7. He used a limited amount of force and no more than necessary to regain control of the situation when Parker continually refused to comply with the orders of a prison guard and then jumped at him in a hostile manner. In evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining

7

order and discipline in an often dangerous and unruly environment. *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987). "[I]f force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended 'to reduce the incidence of riots and other breaches of prison discipline.'" *McBride v. Rivers*, 170 Fed.Appx. 648, 656 (11th Cir. 2006) (quoting *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991)). While this deference "does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Ort*, 813 F.2d at 322 (quoting *Whitley*, 475 U.S. at 322). Where the only question concerns the reasonableness of the force used by a prison official, the defendant will ordinarily be entitled to judgment as a matter of law. *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (explaining that "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary"); *McBride*, 170 Fed.Appx. at 657 (although correctional officers could arguably have used less force after subduing inmate, inmate "failed to produce evidence showing that these measures were taken 'maliciously and sadistically for the very purpose of causing harm.'") (citations omitted).

Parker contends that Woods failed to mention the extent of his injuries which he describes as "A) Steel plate on left clavicle is bent. B) Disfigurement of left clavicle. C) Constant discomfort and swelling as a direct result of the bent steel plate." *(Doc. No. 15 at pg. 2.)* It is undisputed that a correctional official escorted Parker to the infirmary for an evaluation immediately after Woods escorted him to Lt. Bolling's office. The emergency

treatment report shows that Parker informed medical personnel that he had broken his left shoulder (the shoulder he states Woods fell on) while in the free world and that it was scheduled for an x-ray that day.[3] Medical personnel noted Parker's complaints of pain in his shoulders and provided him with pain medication. Otherwise, Parker required no medical treatment and he was released from the infirmary and returned to his assigned living area. There is no indication that Parker either requested or required any further medical treatment as a result of the March 31, 2003 incident. Although Parker's medical records show that he made a few complaints related to left shoulder pain, such complaints were made long after the March 31, 2003 incident. (*See Doc. No. 15 at pgs. 9, 11, 14*.)  Parker has produced no evidence of the injuries described in his opposition other than his own conclusory allegations, which cannot withstand a motion for summary judgment. *See Larken v. Perkins,* 22 Fed. Appx. 114, *1 (4th Cir. October 29, 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment).  Moreover, Woods has produced evidence of a pre-existing injury to Parker's clavicle/shoulder prior to his most recent incarceration.

The court finds from the evidence that Woods gave Parker several orders to get off his assigned bunk and make his bed.  Parker failed to comply with these orders and then

---

[3]Parker's medical records show that he injured his left shoulder in a motorcycle wreck in 1993.  He had a mid-third clavicle fracture which was slow to heal. On July 6, 2000 Parker was employed as a mechanic.  While working on an engine he felt a pop in his left shoulder clavicle region with resulting significant pain. On July 12, 2000 Parker underwent an "open reduction and internal fixation of left clavicle non-union with iliac crest bone graft from right hip."   (*See Doc. No. 13 at pgs. 58-70.*)

9

escalated the situation by acting aggressively towards Woods. Parker's refusal of direct orders and engagement in conduct which could reasonably be perceived by Woods as threatening sufficed to establish the need for Woods to take decisive action by physically grabbing Parker and taking him to the dorm office. Woods' physical contact with Parker does not appear to the court to have been excessive under the circumstances. Put another way, the evidence fails to establish that Woods used any force in excess of that which was necessary to restore control over Parker. In light of the foregoing, the court finds that Woods is entitled to summary judgment on Parker's claim of excessive force. *See Whitley*, 475 U.S. at 321.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant's Motion for Summary Judgment (Doc. Nos. 11, 13) be GRANTED;

2. Judgment be ENTERED in favor of Defendant and against Plaintiff;

3. This case be DISMISSED with prejudice; and

4. Costs of the proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties shall file any objections to the Recommendation on or before November 6 , 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are

advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

DONE, this 24th day of October, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE